☐ FILED   ☒ LODGED

**Nov 17 2023**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Svanton Cook (A.D.C.#149256)
Name and Prisoner/Booking Number

A.S.P.C-Lewis/Stiner
Place of Confinement

P.O. Box 70
Mailing Address

Buckeye, AZ 85326
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Svanton Cook,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Board of Supervisors,
(Full Name of Defendant)

(2) Maricopa County,

(3) Correctional Health Serv

(4) M.C.S.O/Paul Babeu,

(5) AZ Dept. Defendant(s) Transportation

☒ Check if there are additional Defendants and attach page 1-A listing them.

(6) Charlie Nagle

CASE NO. **CV-23-2412-PHX-JJT-JZB**
_____
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT**
**BY A PRISONER**

(Jury Trial) Demanded

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☐ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983 ; 28 U.S.C. § 1367 (Pendant Jurisdiction)
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☒ Other: A.R.S§§ 20-3151, et. Seq.; A.R.S§§ 20-1721, et. S.
   A.R.S§§ 20-2501,et. Seq.; A.R.S§ 12-820, et. Seq
2. Institution/city where violation occurred: _____

Revised 12/1/20                    1                    **550/555**

Neely vs. Humphrey,

## B.  DEFENDANTS

1.  Name of first Defendant: _Board Supervisors_ The first Defendant is employed
as: _Policy Maker_ at _Maricopa County_ .
           (Position and Title)                              (Institution)

2.  Name of second Defendant: _Maricopa County_ The second Defendant is employed as:
as: _____ at _Arizona_ .
           (Position and Title)                              (Institution)

3.  Name of third Defendant: _Correctional Health Ser_ The third Defendant is employed
as: _Contract Health Care Provider_ at _M.C.S.D.-County Jail_ .
           (Position and Title)                              (Institution)

4.  Name of fourth Defendant: _M.C.S.D/Jail Bobby_ The fourth Defendant is employed
as: _Sheriff_ at _Maricopa County_ .
           (Position and Title)                              (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while you were a prisoner?    ☒ Yes        ☐ No

2.  If yes, how many lawsuits have you filed? _4_ .  Describe the previous lawsuits:

    a.  First prior lawsuit:
        1.  Parties: _Juantun Cook_ v. _Centurion Health Ser_
        2.  Court and case number: _CV-23-00605-JJ_ .
        3.  Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _Still Pending!!_

    b.  Second prior lawsuit:
        1.  Parties: _Juantun Cook_ v. _Arizona Health Ser_
        2.  Court and case number: _____
        3.  Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _Settlement Agreement_
            _Via Summary Judgement_

    c.  Third prior lawsuit:
        1.  Parties: _Juantun Cook_ v. _Charles Ryan_
        2.  Court and case number: _____
        3.  Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
            _Voluntary Dismissal_

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.   CAUSE OF ACTION

### COUNT I

1.   State the constitutional or other federal civil right that was violated: _14th Amendment Due Process_
_Bull vs. Burdion, 462 U.S. 535 (1971)_

2.   **Count I.** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☒ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____
_Jennings vs. Mahoney, 464 U.S. 25  92 S.Ct. 180 (1971)_

3.   **Supporting Facts.** State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

[3.A.1] - On August 19, 2019 The Plaintiff was released from A.D.O.C. Custody in CR# 2007-03129-001 And #2007-155729-001 To serve a term of Community Supervision Imposed by The Honorable Judge Silva Arellano in Accordance to A.R.S. 41-1604.09-09

[3.A.2] - On May 25, 2020 the Petitioner Contacted the Dept of Motor Vehicles Division Office in Mesa AZ doing an Inquiry into whether His/Her Drivers License was valid And/or the Necessary Procedural Steps That He/She would Need to Reinstate His/Her Driving Priviledges [A.R.S. 78-3153 (A)(9)

[3.A.3] - The Plaintiff was Advised by D.M.V. Person(s) that His/Her Drivers License was Currently Suspended Due to a Traffic Ticket within the City of Tempe. And That She would Need to First Contact the

4.   **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
[4.A.1] Prolonged Pretrial Incarceration, Covid 19 False Imprisonment, Financial Hardship, Emotional Distress Psychological Torture, Excessive Punishment

5.   **Administrative Remedies:**
a.   Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   _Inmate a Claim_   ☒ Yes   ☐ No
b.   Did you submit a request for administrative relief on Count I?   ☒ Yes   ☐ No
c.   Did you appeal your request for relief on Count I to the highest level?   ☒ Yes   ☐ No
d.   If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.   _____
_____

3

4.

- Tempe Municipal Court to pay Any outstanding fines or fees associated with such traffic ticket [A.R.S. § 28-3153(B)(1)(2)]

[3.A.4] - Furthermore, Dept of Motor Vehicles Representative Advised that once the Tempe Municipal Court Notified the AZ Dept of Transportation that such fines or fees had been Paid in Full Plaintiff would only Need to Pay an Additional $10.00 Reinstatement Fee 100.00 Vehicle Registration [See A.R.S. § 28-3153(B)(2)]

[3.A.5] - Ultimately Plaintiff was Advised by AZ Dept of Motor Vehicles Representatives that Apon Payment of Court fines, fees And Applicable Reinstatement fees the Plaintiff would otherwise be Eligible For the Re-instatement of Drivers License wherein the AZ Dept of Motor Vehicles would issue Petitioner A Valid Drivers License

5,

[3,A,6] - Accordingly on May 26, 2020 The Plaintiff Made Financial Arrangements with the Tempe Municipal Courts To Pay Any Outstanding Fines or fees that May Have Prevented The D.M.V from Otherwise Re-instatement of Neither Driving Privledges And/or issuance of A Valid Drivers License To the Plaintiff Pursuant to A.R.S § 28-3153 (A)(4) And (B)(2)]

[3,A,7] - On May 27, 2020 Upon the Tempe Municipal Court issuance of Notice to AZ Dept of Motor Vehicles that Such Fine (or fees) Relative to Such Traffic Tickets [A.R.S § 28-3153(C)] Had been Paid And Removal of Any Barrier that May Have otherwise Prevented The D.M.V And/or AZ Dept of Motor Vehicles To Din Re-instatement or issuance of A Valid Drivers License [28-3153(B)(2)] The Petitioner Physically Appeared At the Mesa AZ DMV office Wherein Paid the Additional $10.00 Reinstatement And $10.00

6.

- Vehicle Registration Fee Applied For And Recieved A Valid Photostatic Copy Of AZ/State Drivers License Pursuant To A.R.S 28-3116 Whereby Plaintiff Was Otherwise Advised that A Hard Copy Of Such Drivers License Would Be Sent Via the U.S. Postal Service (A.R.S 28-444)

[3.A.7.] - Subsequently On Nov 15, 202 (CR#2021-002141-001) January 16, 2021) (CR#2021-001928-001) And March 6, 2021 The Appellant Was Arrested And Charged With Both A Misdemeanor D.U.I And/or Aggravated D.U.I

[3.A.8.] - However On or About November 28, 2020 And/or January 26, 2021 The Petitioner Mailed/Delivered Via U.S Mail A/State Request To AZ Dept of Motor Vehicles Seeking Admin Review Of Any And All Admin Per-Se ~~license~~ Suspensions

7.

[3.A.9] - Wherein The AZ Dept of Motor Vehicles other-wise Failed to Conduct Any Admin Review Hearings or Notify The Plaintiff of Any License Suspensions

[3.A.10] - Ultimately On May 26, 2021 The Plaintiff was Incarcerated within the AZ Dept of Corrections for A Parole Violation

[3.A.11] - On June 11 2021 The Petitioner Submitted Mailed/Delivered A Bulk (8.3) Motion to Quash Warrant and/or Dismiss Complaints

[3.A.12] - Upon Reciept of Such Motion The Mesa City Prosecutor (Lauren Ramirez) Filed A Motion with the Mesa Municipal Court Seeking Dismissal of Misdemeanor DUI within Mesa Municipal Court Number(s) 2020-05D0622-001 2020-06D0396-001

8.

4.) - Liberty Interest

[4.A.1] - In The Deprivation of the Plaintiffs Liberty Interest To Such Drivers License Named Defendant AZ. Dept of Transportation Failed To Provide The Named Plaintiff With Any Administrative Reviews Hearing As Plaintiff Otherwise Requested

[4.A.2] - Nevertheless Named Defendants AZ Dept of Transportation Failed To Provide The Plaintiff With Any Notice of License Suspension

[4.A.3] - Due to Named Defendant AZ Dept of Motor Vehicles Admitted Failure to Provide Any AZ Dept of Transportation Customer With Any Notice of License Suspension

[4.A.4] - AZ Dept of Corrections Common Custom Policy of Practice Subsequently Deprived the Plaintiff a Noticer Liberty Interest

9.

-to his/her Drivers License, Motor Vehicle Insurance Resulting in Imprisonment for (12) years

5.) - Procedural Due Process

[5.A.1] - In the Deprivation of the Plaintiff's Drivers License Named Defendants AZ Dept of Motor Vehicles failed to Advise the Plaintiff of Any License Suspension.

[5.A.2] - In Failing to Advise the Plaintiff of Any License Suspension The AZ Dept of Motor Vehicles Violated Procedural Due Process As otherwise Articulated within Bell VS. Burson 402 U.S. 535 (1971)

Fogind VS. AZ Dept of Transportation 191 Ariz. 77 (1997)

6.) - Substantial Prejudice

[6.A.1] - Resulting from the AZ Dept of Motor Vehicles Admitted Failure to Mail/Deliver Any Notice of Suspension

10y

[0.A.2]-Such was Resulted in A Atypical And Significant Hardship of (10) Years Imprisonment AS Aposed to (16) months County JJil

State vs. Yozzie, 257 Ariz 615 (2013)

Violative of Due Process

## COUNT II

1.  State the constitutional or other federal civil right that was violated: _14th Amendment; Due Process_
    _Sandin vs. Conner_.

2.  **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
    - [ ] Basic necessities
    - [ ] Mail
    - [ ] Access to the court
    - [ ] Medical care
    - [x] Disciplinary proceedings
    - [ ] Property
    - [ ] Exercise of religion
    - [ ] Retaliation
    - [ ] Excessive force by an officer
    - [ ] Threat to safety
    - [ ] Other: _____

    _Bull vs. Woodshi_

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    [3.A.1] On November 15, 2020, January 16, 2021 and March 4, 2021 the Plaintiff was Arrested and charged with Misdemeanor DUI, and/or aggravated DUI in violation of A.R.S. 28-1381, A.R.S. 28-1383, 28-1383.

    [3.A.2] On May 18, 2021 the Plaintiff was incarcerated with the AZ Dept of Corrections for Parole violation in No. 2007-055729-001.

    [3.A.3] On June 11, 2021 the Applicant submitted/Mailed/Drove a Rule 35 Motion to Quash Warrant and/or Dismiss Complaints to both the Civil of the Court and City County Prosecutor.

    [3.A.4] Apon Reciept of such Motions the City Prosecutor for Tolleson Bonner filed a (ULY4) Motion within the Maricopa Municipal Court swinging the Dismissal of Misdemeanor DUI charges in case No. 2020-050072-001 & case No. 2020-060350-001

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
    [4.A.1] Plaintiff hereby incorporates paragraphs 4.A.1 as Administered to this Page 1

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? _Notice of Claim_    [x] Yes   [ ] No
    b.  Did you submit a request for administrative relief on Count II?    [x] Yes   [ ] No
    c.  Did you appeal your request for relief on Count II to the highest level?    [x] Yes   [ ] No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

12.

[3.A.5] - On June 28, 2021 And June 30, 2021 The Mesa Municipal Court Dismiss The Leases Included Misdemeanor DUI Subsequently Refilled by the State As An Aggravated DUI. In CR# 2021-001141 001

[3.A.6] - On August 16, 2021 And August 18, 2021 The State Obtained Grand Jury Indictments (S) in Case Number(S) CR# 2021-001878-001 2021-001949-001

[3.A.7] - On August 19, 2021 The Prosper Mailed Appellants Request For Final Disposition Under Rule 8.3 In both The Superior Court And the County Attorney's Office

[3.A.8] - Additionally On September 1, 2021 The Plaintiff Mailed/ Delivered His/Her "Motion to Invoke Speedy Trial Rights Per Rule 8.3" In both The Superior Court And the County Attorney's Office

13.

4.) - Liberty Intrest

[4.A.1] - Plaintiff Alledges that Named Defendants Board of Supervisors Maricopa County And/or Charlie Nagle knew, And/or had reason to Believe that Rule (8.3) Gave rise to A Liberty Intrest Protected by Due Process of Laws [See, A.R.S §§ 11 - 1602(8)(10)] [A.R.S §§ 11 - 1604 (B))

[4.A.2] - Furthermore Plaintiff Sergatori Cook Alledges that Despite The Mandatory Provisions of Rule (8.3) And/or A.R.S §§ 11 - 1604 Named Defendants Board of Supervisors Maricopa County And/or Charlie Nagle Application of Duplicate Regulation, Restraint to Deprive the Plaintiff of Such Liberty Intrest Served As A Form of Punishment for the Plaintiff Exercise of his/her Constitutional Rights

[4.A.3] - Due to the Named Defendants Deliberate Indifference to The Plaintiffs Statutorily Created Liberty Intrest Protected by Due Process

14.

And/or Common Custom, Policy or Practice thus to Deprive Plaintiff of his/her Liberty Interest.

[4,A,4] The Individual and/or Collective Acts or Omissions of Named Defendant(s) Board of Supervisors, Maricopa County and/or Charlie Neagle Ultimately Subjected the Plaintiff to An Atypical And Significant Hardship in Relation to Ordinary Incidents of Prison Life by Depriving of Earned Release Credits Nonelement Sentencing Podlongent Portwal Inc. [A.R.S. 41-1604, et seq.]

[4,A,5] Ultimately Named Defendant Board of Supervisors and/or Maricopa County Common Custom, Policy and/or Practice in Failure to Adequately Screen Contract Facilities (DOC Employees) to Ensure Meaningful Adversarial Testing of Legal Claims thus to Prevent, Desire Constitutional Violations Amounted to the Actual/Constructive Denial of Counsel For the Plaintiff.

15.

## COUNT III

1. State the constitutional or other federal civil right that was violated: _19th Amendment, Adequate Medical Care_
_Bell vs. Wolfish_

2. **Count III.** Identify the issue involved? Check **only one.** State additional issues in separate counts.
   ☐ Basic necessities          ☐ Mail          ☐ Access to the court     ☒ Medical care
   ☐ Disciplinary proceedings   ☐ Property      ☐ Exercise of religion    ☐ Retaliation
   ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.
_Jeff vs. Penner_

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

[3A)] - Background

[3.A.1] - Since Birth The Plaintiff (Stanton Cody) has and continues to suffer from a rare Neurological Disorder (Hydrocephalus)

[3.A.2] - The Plaintiffs Neurological Disorder (Hydrocephalus) is the approximate cause to his/her Seizure Disorder

[3.A.3] - Historically as treatment for the Plaintiffs Neurological, Epileptic Temporal Lobe Seizure Disorder, he/she has been Prescribed a Number of Anti-Convulsant Medications (Dylantin, Depakote, Valproic Acid, Tegretol, Phenobarbital, Buspar ... Etc) as then-wise reflective by Medical Records from Wexford Health And/or Corizon Health Services (2007-2019)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s). _Organic Brain Damage, Loss of Teeth, Brain Injuries, Emotional Distress, Psychological Injury, Irreparable Damage to Blood Vessels in Brain_

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?          ☒ Yes     ☐ No
   b. Did you submit a request for administrative relief on Count III?          ☒ Yes     ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?     ☒ Yes     ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____.

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

16

[3.A.4] - These Historically Prescribed Medications have been Administered In Varying Dosage And/or in Combination As Modality of Treatment For the Plaintiffs Neurological/Epileptic Seizure Disorder

[3.A.5] - However, These Historically Prescribed Medications have been Determined within the Clinical Decision of Previous Health Care Providers And/or Neurological Specialist to be Ineffective or Inadequate form of Treatment for Plaintiff Neurological Seizure Disorder And/or Clinically Inappropriate Modality of Treatment"

[3.A.6] - Consequently Upon the Plaintiff Continued Experience of Seizure Activity....

M.D. Thomas Bell (Wexford Health) Subsequently Requested Consultation with Neurological Specialist to Determine the Modality of Treatment And the Provision of Adequate Medical Care for the Plaintiff

[3.A.7] - Accordingly In 2008, 2010 And 2011 The Plaintiff was Seen by Neurological Specialist Wherein on the Basi

-Scientific Evidence ( X-Ray, E.K.G, MRI
C.T Scan) And/or
The Plaintiffs Medical History As
Reflective by Institutional Medical Record

[3.A.8] - The Neurological Specialist
Concluded within His/Her
Diagnostic Report(s) To otherwise
Prescribe Plaintiff with 1200mg Neurontin/
Gabapentine (3x) Re day As Modality of
Treatment for His/Her Neurological
Seizure Disorder As otherwise Documented
within Plaintiffs Medical Records from
          (a)- Wexford Health Services
          (b)- Corizon Health Services
          (c)- Neuro Diagnostic Imaging

[3.A.9] - Consequently In Accordance to
          The Neurological Specialist
Clinical Decision with respect to the
Administration of Adequate Medical Care
          M.D., Thomas Bell
          M.D., Kenneth Merchant
          N.P., Smalley
          N.P., Lawrence Ende
And others followed the Directives of

- Neurological Specialist As otherwise Indicative within Such Historic Diagnostic Reports from 2010 To 2017

[3.A.10] - In Approximately April 2017 while The Plaintiff was Housed At A.S.P.C - Lewis/Barchey Unit....

Without Any Physical Evaluation, Examination And/or Consultation with the Plaintiff....

Physicians Assistant J'thad Elijah Abruptly And/or Arbitrarily Discontinued the Plaintiffs Anti-Seizure Medications otherwise Prescribed by Neurological Specialist in 2011

[3.A.11] - Consequently Due to the Change in the Plaintiffs Anti-Seizure Medications From; 1800$^{mg}$ Gabapentine (2X) Per day, To' 750$^{mg}$ Keppra (2X's) Per day [Administration of Medications is Conducted only (2X's Per day] The Plaintiff began to Experience A Marked Substantial Increase in Seizure Activity

[3.A.12] - Additionally Due to the **Arbitrary Change** in Plaintiffs Seizure Medications in April 2017...

The Plaintiff begun to Experience **Adverse Negative Side Affects** Associated with the Psychotropic Medication (Keppra)

[3.A.13] - Specifically The **Adverse Negative Side Affects** Associated with Psychotropic Medication (Keppra) Became **Badily Apparent** by the Plaintiffs Repeated Display of Suicide/Homicidal Ideation Resulting in the Placement of the Plaintiff on **Mental Health Watch** in Accordance to Dept Order #706, Dept Order #807 And/or Dept Order #1103

§ B.) - Medical History

[3.B.1] - In Approximately February 2018 As otherwise Indicative by Medical Records from Corizon Health Services... Apon Report of Continued Seizure Activity (D.O #706) Despite Consumption of Psychotropic Medication (Keppra)

[3.B.2] - Nurse Practisioner (N.P.) Nancy Smith Submitted Request for Specialty Consult for the Plaintiff to be Seen by Radiologist This to Subject the Plaintiff To

(a.) Magnetic Resolution Imagery (M.R.I)

(b.) C.T. Scan

[3.B.3] - In Approximately March 2018 The Plaintiff (Quantum Cook) was Subjected to An M.R.I. And/or CT-Scan wherein Diagnostic Reports Confirmed Plaintiffs Neurological Condition (Hydrocephalus)

[3.B.4] - However, The Diagnostic Report In March 2018 ADD Concluded that There did not Appear to be Any Form of Abnormality Present V.P. Shunt was Intact And Functioning Properly

[3.B.5] - In April 2018 After Plaintiff Had And Continued To Experience Adverse Negative Side Fx Associated with

-The Psychotropic Medication (Abilify) As Reflective by the Plaintiffs 3rd Display of Suicidel/Homicidal Ideation wherein is Placed on **Mental Health Watch** in Accord to D.O.# 706, D.O.# 807 And/or Dept Order 1103

[3.B.6]-Nurse Practisioner (N.P.) Lawrence Ende Subsequently Changed The Plaintiffs Anti-Seizure Medication From: 750 mg Keppra (2x) Per day To : 900 mg Gabapentine 2x per day 600 mg Trileptal (2x) Per day

[3.B.7]-Additionally In Approximately May 2018, N.P. Lawrence Ende Submitted Request for Specialty Consult with Neurologist to Determine the Modality of Treatment for the Plaintiffs Serious Medical Need(s) And/or the Provision of Adequate Medical Care

[3.B.8]-However, Despite Repeated Provider Request for Specialty Consult Without Any Physical Evaluation, Examination And/or Consultation with the Plaintiff Such Providers Request for Specialty Consult

22.

- Was otherwise Reportedly And/or Routinely Arbitrarily Denied by Horizon Healths Utilization Management Team in Accord To Such Common Custom Policy And/or Practice (U.M 001 Thru 008)

## (C) - Neurological Specialist

[3.C.1] - In August 2019, The Plaintiff (Brandon Cook) was Released from the Arizona Dept of Corrections And Placed On Community Supervision In Accord to A.R.S § 41-1604, et. seg

[3.C.2] - Apon the Plaintiffs Release From A.D.D.C Custody In August 2019 In Accordance to D.O.C Policy #1081 The Plaintiff was Given A (30) day Supply of his/Her Proscribed Anti-Seizure Medications

900 mg Gabapentine (To be taken 2x per day
600 mg Trileptol (To be Taken 2x per day

[3.C.3] - Apon Enrollment into the AHHCS Health Care System As Means To Seek out Adequate Medical Care

23

- The Plaintiff was Able to Choose a Health Care Plan... This to Seek the Continuation of Adequate Medical Care

[3.C.4] - In According to the Plaintiffs Selected Health Care Plan The Plaintiff was Assigned to Network Providers

     (a) M.D. Punini
     Valleywise Health

     (b) George Lee Wong (Neurologist)
     Neuro Diagnostic Sleep meds
     And Associates

[3.C.5] - In Approximately November 2019 The Plaintiff was Able to Schedule An Appointment with M.D. Punini & Valleywise Health in Mesa Arizona

[3.C.6] - Apon Consultation with M.D. Punini The Plaintiffs Health Care Provider was Able to Conduct A Physical Examination And Examination of the Plaintiff

<u>23.</u>

[3.C.7]-Additionally Medical Records from Valleywise Health Shall ADD Reflect that in Approximately November 2019 M.D. Papini was Able to Further Information Relative to the Plaintiffs Medical History And/or Neurological Condition

[3.C.8.]-Furthermore, M.D. Papini was Able Aguire the Plaintiffs Medical Records from: Corizon Health Services St Josephs Hospital Neuro Diagnostic Imaging Center And/or Others by Which to formulate Any Clinical Decision Relative to the Plaintiffs Health Care Needs And/or Concerns

[3.C.9]-Ultimately In November 2019 M.D. Papini ordered the Continuation of Prescribed Anti-Seizure Medications

900$^{mg}$ Gabapentine (3x) per day (And) 600$^{mg}$ Trileptal (2x) per Day

[3.C.10]-Additionally In Approximately November 2019 Due to Plaintiffs Reports of Continued Seizure Activity...

-M.D. Pinini of Valleywise Health otherwise Submitted A Referral for Consultation, Evaluation And/or Examination by Network Providers

George Lee Wong
Neurologist

[3.C.11] - While the Plaintiff Had And Continued to Experience Seizure Activity.....

The Plaintiff was otherwise Seen by Neurologist George Lee Wong For Consultation, Evaluation, Physical Examin- ation And Treatment in Approximately March 2020

[3.C.12] - Apon Consultation Evaluation, Physical Examination with Neurologist George Lee Wong in March 2020 On The Basis Of Scientific Evidence Such As The Plaintiffs Medical Records From Corizon Health Services And/or M.R.I From Dignity Health Group (Nov 2019) George Lee Wong was Able to Formulate And Make A Clinical Decision To Increase The Plaintiffs Anti-Seizure Medications

—From: 900^mg Gabapentine (3x) Per day And 600^mg Trileptal (2x) Per day

To: 1200^mg Gabapentine (3x) Per day 600^mg Trileptal (2x) per day

As Modality of Treatment And to Ensure the Provision of Adequate Medical Care for the Plaintiff

D.

[3.C.13] - However, In Approximately November And/or December 2020 The Plaintiff otherwise culd And Continued to Experience Periodic Seizure Activity Marked by Sharp Agonizing Pain in all/Her Right Side of the Abdomen Lasting 4-6 minutes in Duration

[3.C.14] - Consequently, In Approximately November/December 2020 the Plaintiff Admitted Self into Emergency Urgent Care At Dignity Health in Chandler Arizona

[3.C.15] - Upon Consultation with Provider At Dignity Health, The Plaintiff

- Was Subjected to Both

(a) M.R.I ; And

(b) CT-Scan

[3-C-16] - On the Bass of Scientific Evidence in the Conclusion of Physical Evaluation And/or Examination Health Care Providers From Dignity Health Was Able to formulate And Reach A Clinical Decision in the Diagnostic Report(s) That the Plaintiff Suffered From

Shunt Malfunction

[3.C.17] - Subsequently, Health Care Providers From Dignity Health Imediately Submitted A Referral To St. Josephs Hospital For A 2nd Opinion And/or Neuro-Surgery Consultation

[3.C.18] - Apon Admittence into St. Josephs Hospital Emergency Room---- (Nov/Dec 2020) The Plaintiff Was Subjected to

(a) M.R.I ; And

(b) CT-Scan

28

[3.C.19] - Upon the Conclusion of all Physical Evaluations And/or Examinations ... Neurologist/Radiologist from St. Josephs Hospital Concluded within Diagnostic Reports that the Plaintiff did Experienced Shunt Malfunction

[3.C.20] - On The Basis of Such Scientific Evidence The Neurologist And/or Radiologist from St. Josephs Hospital Submitted Emergency Referral For

Neuro-Surgery

Thus to Reach Any Clinical Decision And/or Qualified Determination Whether to Subject the Plaintiff to Neuro Surgery to Correct Shunt Malfunction Presenting Substantial Risk of Harm to Plaintiffs Future Health And Safety

[3.C.21] - However, Due to the 'C.O.V.I.D 19 Health Care Pandemic' of 2019-2023 ... Plaintiff Subsequently Experienced Scheduling Difficulties In Contact with

<u>29,</u>

# 4.)-Statement of Facts

[4,A,1] - On September 15, 2021 The Plaintiff Quinton Cook was Transferred From; A.S.P.C-Lewis/Bast Jb ; M.C.S.D County Jail (See A.B. §§ 31-116 )

[4,A,2] - During Intake Screening by Health Care Professionals From Correctional Health Services The Plaintiff Advised of his/her Medical History As Articulated above Such Specialty Consultation with Neurological Specialist And/or Neuro Surger/

[4,A,3] - On Sept 15, 2021 The Plaintiff was Seen by N.P. Jane Doe whereas Physically Evaluated And/or Examined The Plaintiff

[4,A,4] -Although N.P. Jane Doe did Not Work A Complete Medical Record For the Plaintiff to Include but Not Limited to
(i)-Medical History
(ii)-M.R.I / X-Ray/Ct-Scan
(iii)-Diagnostic Reports

30.

[4.A.5] - On The Basis of Such
Incomplete Medical Record
N.P. Jane Doe Prescribed Clinically
Inappropriate Modality of Treatment
750mg Keppra
For the Plaintiffs Neurological Seizure
Disorder

[4.A.6] - While The Plaintiff Had And
Continued to Experience
Seizure Activity,
The Plaintiff Submitted A
Number of Health Needs Request
Seeking to Obtain, Aquire Medical
Records From;
(i) - Valleywise Health
(ii) - Neuro Diagnostic Sleep
Meds and Associates
(iii) - St. Josephs Hospital
(iv) - Dignity Health
(v) - Banner Baywood (Scotts)
Thus to Reach A Clinical Decision
As to The Modality of Treatment For
Plaintiffs Neurological Seizure
Disorder

31

[4,A,7] - Additionally, Between the Approximate periods of Sept 2021 to July 2022 The plaintiff Submitted A Number of Health Need Request to Correctional Health Serv Seeking Consultation with Neurologis

[4,A,8] - Although in Approximately February 2022 The plaintiff was seen by N.P Jane Doe #2 wherein Apon Physical Examination And/or Examination Subsequently Changed the plaintiffs Medication From: 750mg Keppra (2x per da, To: 600mg Gabapentine 2x perd.

[~~4,A,8~~] -

[4,A,9] - N.P Jane Doe Also Submitte Request To Specialty Consultation for the plaintiff to be seen by Neurological Specialist To Prevent Any Clinical Decision As to The Modality of Treatment Thus to Ensure Adequate Medical Care For The plaintiff

32,

[4.A.10] - While N.P Jane Doe Noted within The Plaintiffs Medical Records That d/s/Peritoneal Shunt Valve Lump due to the Physical Touch and Not Functioning in A Normal Fashion, Correctional Health Services Subsequently Denied Provider Request For Specialty Consultation With Neurologist in Approximately ~~November March~~ November 2022/March 2022 [But See A.R.S §§ 20-3151, et. seq] A.R.S §§ 20-2501, et. seq]

[4.A.11] - Due to The Unreasonable Delay in Correctional Health Care Services Responsibility To Retain, Aquire And/Or Procure The Plaintiffs Medical Records...... The Plaintiff did not begin to Recieve Minimally Appropriate Treatment Until Approximately March 2022

1200 mg Gabapentine (2x Per Day)

1600 mg Tylenol (2x Per Day)

In Continuity of Adequate Medical Care As Prescribed by George Lee Wong

33,

§5.1-Substantial Risk
of Harm

[5,A,1] - Plaintiff Alledges That Abuse Defendants Jane Doe #1 Jane Doe #2 And/Or C.H.S Knowly And/Or Had Reason to Believe That The Plaintiff Suffered From A Rare Neurological Disorder That Required Neuro-Surgery In Accordance to Medical Records From

(i) Valleywise Health
(ii) - Dignity Health
(iii) St. Josephs Hospital

[5,A,2] - However, Despite Such Serious Medical Needs Named Defendants Jane Doe #1, Jane Doe #2 And Correctional Health Services Failed to Aquire, Procure And/Or Retain The Plaintiffs Medical Records to Ensure Continuity of Health Care And/Or Adequate Medical Care

34,

§ 6.) - Deliberate Indifference

[6.A.1] - Nevertheless Despite Correctional Health Services Aquiring the Plaintiffs Medical Records From

(i) - Valleywise Health
(ii) - Neuro Diagnostic Sleep Meds & Assoc
(iii) - St. Josephs Hospital
(iv) - Dignity Health
In Approximately ~~Between Dec~~ Dec 2022

[6.A.2] - Correctional Health Services Subsequently Denied 2nd Provider Request For Neurologist And/Or Failed To Subject Plaintiff To Any Scientific Examination To obtain A Differential Diagnosis This To Treat the Plaintiffs Shunt Malfunction. [See, A.R.§§ 20-172I, et.seq/ 3320-250].

[6.A.2] - In Light of Such Deliberate Indifference to the Plaintiffs Serious Medical Needs, Such Amounts To No Health Care At All) in Violation Of Due Process

351

## COUNT IV

1. State the constitutional or other federal civil right that was violated:
14th Amendment: Due Process (Correctional Health/Maricopa County)

2. Count IV. Identify the issue involved. Check only one. State additional issues in separate counts.

☐ Basic necessities ☐ Mail ☐ Access to the court ☒ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count IV. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

[3.A.1]- On or about Sept 15, 2021 The Plaintiff Stantyrib Cook was transferred from A.S.P.C-Lewis) past to: M.C.S.D-County Jail

[3.A.2]- During intake Screening by Health Care providers from CHS And/or Maricopa County/Point Behell The Plaintiff advised disclose medical history to Include but not Limited to N.siezre neu(rolog,cal) Disorder And other Pre-existing conditions that exposed the Plaintiff to a substantial Risk of harm posed by COVID-19 health care pandamic

[3.A.3]- On Sept 15, 2021 The Plaintiff was seen by N.P John Doe wherein physically evaluated And/or Examined The Plaintiff

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
[4.A.1]- Organic Brain Damage, Irreparable Damage And/or Loss of Blood Vessels To Brain, Excessive Seizure Activity, Heart problems, Psychological Torture Emotional Distress

5. **Administrative Remedies.**
   1. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   2. Did you submit a request for administrative relief on Count III? ☒ Yes ☐ No
   3. Did you appeal your request for relief on Count III to the highest level? ☒ Yes ☐ No
   4. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

---

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

5

36

[3.A.4]-Although Maricopa County, Paul Babeu Correctional Health Services, Nor N.P. June Doe would not Anix a Complete Medical Record) For the Plaintiff to Include but Not Limited to

(i) - Medical History

(ii) - M.R.I / X-Ray/et Scans

(iii) - Diagnostic Reports

[3.A.5]- On the Basis of Incomplete Medical Records And in Light of the Plaintiffs Pre-Existing Health Care Conditions Named Defendants ~~~~~ Maricopa County Paul Babeu Correctional Health Services (C.H.S) Nor N.P. June Doe #1 Failed to take Necessary Measures to Abate/Negate the Substantial Risk of Contracting C.O.V.I.D 19

[3.A.6]-Specifically In light of The Substantial Risk of Harm Posed by C.O.V.I.D 19 Named Defendants Maricopa County, Paul Babeu, or Correctional Health Services (C.H.S)

37.

- Failed to Implement Any Policy or Procedure to Adequately Screen Individual Detainees for C.O.V.I.D (19) To Ensure The Future Health And Safety of The Plaintiff

[3.A.7] - Specifically Named Defendant(s) Maricopa County And/or Paul Babeu Failed To Implement Any Policy To Adequately Test Pretrial Detainees For C.O.V.I.D (19) And To Corruntine Individual Pretrial Detainees Infected With C.O.V.I.D (19) (See A.R.S 31-104 & 107.)

[3.A.8] Named Defendants Maricopa County C.H.S, Paul Babeu And/or Board of Supervisors knew of The Substantial Risk of harm to Pretrial Detainees Posed by C.O.V.I.D (19) but Adequately Displayed A Becklance Disregard For Pretrial Detainees Future Health And Safety by Implementation of C.O.V.I.D (19) Screening And Administration of C.O.V.I.D 19 Vaccinations.

38.

[3,A,9] - Additionally Despite Executive Orders Relative To C.O.V.I.D (19) And/or Guidelines Formulated by the Dept of Health And Human Services And/or The C.D.C. Named Defendants Maricopa County C.H.S, Paul Babeu And/or Board of Supervisors Deliberately Failed to Take Reasonable Measures to Abate/Negate The Rapid Spread of C.O.V.I. (19 (Covid 19 Vaccinations??)

[3,A,10] - Resulting From Named Defendant Maricopa County Correctional Health Services, Board of Supervisors, Paul Babeu And others Deliberate Indifference To the Plaintiffs Serious Medical Needs, The Plaintiff Subsequently Contracted C.O.V.I.D (19) Presenting A Substantial Risk of Death Due to Pre existing Health Care Needs or Concerns

3𝟡

## E.   REQUEST FOR RELIEF

State the relief you are seeking: _Plaintiff Hereby Request_
_Nominal Damages: $~~1,000,000~~ 1,00_
_Compensatory Damages $150,000_
_Punitive Damages $150,000_
_Injunctive Relief_

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _November 18, 2023_                 _Jeoun_
                    DATE                         SIGNATURE OF PLAINTIFF

_[signature]_

(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_[signature]_

(Signature of attorney, if any)

_[signature]_

(Attorney's address & telephone number)


## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.