SC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| Seantain Cook, | No.   CV-23-02412-PHX-JJT (JZB) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Maricopa County Board of Supervisors, *et al.*, | |
| Defendants. | |

On May 21, 2025, the Court dismissed Plaintiff's First Amended Complaint, with leave to amend, for failure to state a claim (Doc. 34). Plaintiff has filed a Second Amended Complaint (Doc. 35) and a motion to alter or amend judgment (Doc. 36). The Court will deny the motion and will dismiss the Second Amended Complaint and this case.

## I.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II.    Second Amended Complaint

In her[1] five-count, 63-page Second Amended Complaint, Plaintiff alleges claims for violations of due process, denial of constitutionally adequate medical care, and health care insurer liability. Plaintiff sues the Maricopa County Board of Supervisors ("the Board"), Maricopa County ("the County"), Maricopa County Correctional Health Service (CHS), CHS Director Thomas Tegeler, former Maricopa County Sheriff Russ Skinner, the Arizona Department of Health Services (DHS), DHS Director Jennie Cunico,  CHS Nurse Practitioners Jane Doe 1 and Jane Doe 2, Arizona Department of Corrections,

---

[1] Plaintiff uses "he/she," "him/her," and "his/her" as pronouns. *See* Doc. 35 at 5, 6. The Court uses feminine pronouns to refer to Plaintiff.

Rehabilitation & Reentry (ADC) Community Supervision Officer Jesus Lopez,[2] ADC official Anthony Oliveri, Maricopa County Superior Court Commissioner Laura Giaquinto, former Maricopa County Superior Court Judge Pro Tem Benjamin Armstrong, Deputy Maricopa County Attorney Ross Arellano,[3] and Plaintiff's former criminal defense attorney Charlie Naegle.[4]   Plaintiff seeks declaratory, injunctive, compensatory, and punitive relief.

### A.   Background

Plaintiff was born with hydrocephalus and, shortly after birth, a ventriculoperitoneal (VP) shunt was placed in her brain to drain excess cerebrospinal fluid.  *See Cook*, No. CV 23-00668-PHX-KML, Doc. 27 at 4.  Plaintiff has also suffered seizures since birth, for which she has been treated with different medications over the years.  *Id.*

### B.   Second Amended Complaint

Plaintiff designates **Count I** as a claim for violation of due process.  Plaintiff alleges the following with respect to her release to community supervision and subsequent detention for failing to comply with the conditions of community supervision:

Following her release to community supervision on August 19, 2019, Plaintiff was assigned to non-party community supervision officer Anthony Burwell, who explained to Plaintiff her release conditions, including that Plaintiff had to obtain health insurance coverage, find appropriate housing, and seek employment.  Burwell also told Plaintiff that she was required to undergo urinalyses (UAs) and make daily calls to a testing facility, TASC.  Burwell found housing for Plaintiff, and Plaintiff's mother bought Plaintiff a cell

---

[2]   Under state law, ADC is required to "establish conditions of community supervision it deems appropriate for the prisoner and the community, Ariz. Rev. Stat. § 41-1604.07(G), and "supervise any prisoner on community supervision until the period of community supervision expires." Ariz. Rev. Stat. § 41-1604.07(I).

[3]  In minute entries, this Defendant is identified as Ross Arellano Edwards, but the Court refers to him as Defendant Arellano, as Plaintiff has.  *See e.g.*, https://courtminutes.clerkofcourt.maricopa.gov/viewerDoc.asp?sadID=143695 [https://perma.cc/4QYL-A7JR].

[4]  *See, e.g.*, https://courtminutes.clerkofcourt.maricopa.gov/viewerME.asp?Fn=Criminal/042022/m9944739.pdf [https://perma.cc/6B39-Z3CU].

phone.  When Plaintiff was unable to find employment or pay for housing, Burwell allowed Plaintiff to stay at her mother's home until another alternative could be found.  Plaintiff secured alternative housing in October 2019 and notified Burwell of her change of address.  In January 2020, Plaintiff was hired by a temp agency.  At some point, Plaintiff failed to make the required daily phone calls to TASC because she had misplaced her cell phone, but Plaintiff reported to TASC when Burwell told her to do so.

In approximately March 2020, Plaintiff lost her employment due to the COVID-19 pandemic but began receiving unemployment benefits; Plaintiff subsequently became unhoused, apparently after her unemployment benefit ran out.[5]  When Plaintiff attempted to report her loss of housing to Burwell, Plaintiff was told by an unidentified individual at the Mesa Iron Parole Office to leave a message for Parole Supervisor Nancy Palmer because Burwell no longer worked there.  Plaintiff left Palmer a voice mail message.

Plaintiff subsequently lost her cell phone, and on May 4, 2021, an unidentified individual at the Mesa Iron Parole Office contacted Plaintiff's mother.  Plaintiff's mother told the individual that Plaintiff did not live with her, and the individual advised that Plaintiff had failed to submit a UA and needed to report to the Parole Office.  (*Id.*)  The next day, Plaintiff reported to the Mesa Iron Parole Office and learned that Defendant Lopez was her assigned community supervision officer.  Plaintiff informed Lopez that she had left a message for Palmer in April 2021, and that she had failed to report to TASC because she was unhoused.  Plaintiff also stated that she had lost her cell phone and lacked access to a laptop, personal computer, or pay phones.  (*Id.* at 14-15.)

Defendant Lopez acknowledged Plaintiff's challenges.  Lopez stated that he would seek out housing for Plaintiff and instructed Plaintiff to wait in the Office lobby while he did so.  After waiting forty-five minutes, Plaintiff decided that any alternative housing Lopez found would be "heavily populated with" the COVID-19 virus and left the Office to seek housing on her own.  (*Id.* at 17.)  That same day, Defendant Lopez requested a

---

[5] Plaintiff indicates that she could not live with her mother again because it would subject her mother to eviction, apparently because Plaintiff had a criminal record.

warrant for Plaintiff's arrest.  The following day, Defendant Oliveri "acquiesced" to this request.  (*Id.* at 18-19.)  Plaintiff claims that Defendant Oliveri "failed to make any independent investigation" into the facts Lopez included in the warrant request and failed to "adequately" train or supervise Lopez.  (*Id.*)  On May 26, 2021, Plaintiff was arrested for violating the terms of community supervision.  (*Id.* at 19.)

Plaintiff claims that Defendants Lopez and Oliveri knew or had reason to know that they lacked authority to seek Plaintiff's arrest or "effectuate the unreasonable forced exposure to any state created danger marked by air pollutants."  (*Id.*)  Plaintiff claims that Defendant Lopez "forged the arrest warrant."  (*Id.*)

Plaintiff designates **Count II** as a claim for violation of due process.  She alleges the following facts:

On November 15, 2020, and January 16 and March 6, 2021, Plaintiff was charged with misdemeanor or aggravated DUIs.  In May 2021, she was returned to prison for violating conditions of community supervision.  On June 11, 2021, Plaintiff sent a motion to the Maricopa County Superior Court Clerk and the city prosecutor seeking to quash an unidentified arrest warrant and dismiss the criminal complaints.  At some point, the Mesa City Prosecutor moved to dismiss Plaintiff's misdemeanor charges in cases## 2020-050022 and 2020-000350,[6] without prejudice, and the Mesa Municipal Court later granted the motion.  The Maricopa County Attorney filed an aggravated DUI charge in CR 2021-002141, and in August 2021, a Maricopa County Grand Jury indicted Plaintiff for aggravated DUIs and driving on a suspended license in CR 2021-01928 and CR 2021-1949.[7]

---

[6] Plaintiff was charged with a liquor violation in Mesa Municipal Court occurring on September 15, 2020.  *See* https://ecourt.mesaaz.gov/DispositionReport?cn=2020050022&ds=Cms  [https://per-ma.cc/D9T8-9AZY].  Plaintiff was charged in a second case in Mesa Municipal Court with driving on a suspended license and DUI offenses occurring on November 15, 2020.  *See* https://ecourt.mesaaz.gov/DispositionReport?cn=2020060350&ds=Cms  [https://per-ma.cc/HSW4-5W4Y].

[7]  These felony charges were apparently based upon the same events giving rise to the municipal court charges against Plaintiff, which were later dismissed.

On August 19, 2021, Plaintiff sent a request to the Superior Court and County Attorney's Office for final disposition of her criminal cases claiming speedy trial violations under Rule 8.3 of the Arizona Rules of Criminal Procedure.  In September, Plaintiff sent a motion to the Superior Court Clerk and the County Attorney's Office invoking her speedy trial rights.

According to Plaintiff, her term of community supervision expired December 3, 2021.  Plaintiff claims that Defendant Arellano and Giaquinto had 190 days, apparently from the filing of the municipal court charges, to dispose "of any subsequent case," including CR 2021-001922, CR 2021-001949, and CR 2021-002141.  Plaintiff also claims that Defendant Arellano failed to timely "bring about the final disposition" of these cases, that Defendant Naegle "deliberately acquiesced" in continued violations of Plaintiff's rights, and that Defendant Giaquinto failed to dismiss the Superior Court charges in the three cases despite violations of Plaintiff's rights.  Plaintiff further claims that Defendants Arellano, Naegle, "and/or" Giaquinto individually or collectively violated Plaintiff's liberty interests by subjecting her to excessive bail and a "state created danger of air pollutants (C.O.V.I.D. 19)" while she was detained in Maricopa County jails between September 15, 2021, and June 22, 2022.  (*Id.* at 26-27.)

In addition, Plaintiff alleges that Defendants Maricopa County, the Board, Gates, Armstrong, Giaquinto, Arellano, and Naegle individually "and/or" collectively knew or had reason to know that Plaintiff's speedy trial rights had been violated.  She further contends that Defendants Giaquinto and Armstrong relied on "duplicate regulations" to retaliate against Plaintiff for asserting substantive and procedural challenges in her criminal proceedings.  (*Id.*)  Plaintiff claims that pursuant to a custom, policy, or practice, Defendants Maricopa County "and/or" the Board failed to adequately train or supervise their subordinates.  (*Id.*)  She also claims that Defendants County, Board, and Gates failed to adequately screen and supervise their subordinates, including "1099 employees," and to "ensure meaningful adversarial testing" of pretrial detainees' claims under the Sixth Amendment, amounting to a denial of the effective assistance of counsel.

Plaintiff designates **Count III** as a claim for the denial of constitutionally adequate medical care, while she was detained in Maricopa County jails between September 15, 2021, and June 22, 2022.[8]  Plaintiff alleges the following:

In August 2020, physicians at St. Joseph's diagnosed a shunt "disconnect"[9] and determined that immediate surgery was unwarranted but nevertheless "submitted" an "Emergency Referral and/or prior authorization for neurosurgery."  (Doc. 35 at 39.)  On September 15, 2021, Plaintiff was transferred from ADC to a Maricopa County Jail in connection with her new criminal charges.  According to Plaintiff, ADC failed to send complete copies of her prison medical records to the jail and only sent a single page listing her current diagnoses, treatment plan, special needs orders, and allergies.  During intake screening, "Health Care Professionals from [DHS] and/or [CHS] utterly failed to a[c]quire . . . [Plaintiff's] complete medical record" to ensure the provision of adequate medical care while detained in jail.  (*Id.* at 41.)  Plaintiff did, however, tell Defendant Doe 1 of her medical conditions and requested a neurosurgery consultation to address possible shunt disconnection.  Plaintiff also told Defendant Doe 1 about previous adverse side-effects she had suffered on Keppra, an anti-seizure medication.  Defendants CHS "and/or" Doe 1 nevertheless prescribed Keppra for Plaintiff's seizure disorder.

Plaintiff also somehow informed Defendants DHS "and/or" Skinner of her medical history and ongoing medical needs and sought consultation to address her "neurological condition hydrocephalus/shunt malfunction."  (*Id.* at 41.)  However, Defendants DHS,

---

[8]  In CV 23-668, Plaintiff asserts that she was denied constitutionally adequate medical care while she was incarcerated by ADC prior to September 15, 2021.

[9]  According to the Hydrocephalus Association,

> A shunt disconnection happens when the shunt system's components separate or misalign from their intended positions.  This can occur due to wear, physical trauma, movement, or the natural growth of a child when the shunt was implanted during infancy.  Despite a disconnection, the formation of scar tissue around the subcutaneous catheter may still permit fluid to flow.  Nonetheless, it's essential to recognize that a shunt disconnection can disturb the regular flow of [cerebrospinal fluid], resulting in symptoms of a malfunction.

*See* https://www.hydroassoc.org/complications-of-shunt-systems/ [https://perma.cc/CJ6M-G65W].

Cunico, "and/or" Skinner "deliberately" treated Plaintiff with an inappropriate medication rather than neurosurgery. (*Id.* at 43.)  According to Plaintiff, due to COVID-19, and the denial of specialty consultations by Defendants DHS and Skinner, her condition deteriorated, allegedly resulting in microvascular ischemic tears.  In addition, Plaintiff allegedly continued to suffer from seizures and submitted health needs requests to Defendants DHS "and/or" CHS asking them to obtain her complete medical record. (*Id.*) Plaintiff claims that between September 2021 and November 2021, Defendants DHS, CHS, Skinner, "and/or" Tegeler had "otherwise been able to a[c]quire scantily clad excerpts of [her] medical records[,]" which were sufficient to provide these persons or entities "actual knowledge" of Plaintiff's medical conditions and to give rise to a duty to investigate Plaintiff's medical history.  (*Id.* at 44-45.)  Plaintiff continued to submit health needs requests to Defendants DHS "and/or" CHS seeking evaluation by a neurologist or neurosurgeon and for an MRI, CT scan, and "clinically appropriate" treatment.  (*Id.* at 45-46.)

In February 2022, Defendant Doe 2 examined Plaintiff and substituted gabapentin for Keppra.  Defendant Doe 2 also requested authorization from DHS "and/or" the CHS utilization review teams for a neurological consultation for Plaintiff.  (*Id.* at 46.)  Defendant Doe 2 noted that Plaintiff's shunt was hard to the touch, and that it was not functioning normally.  The request was denied, according to Plaintiff, despite "[d]ocumentation of a clearly present matter of imminent danger to" her health.  (*Id.* at 47.)  Plaintiff claims that Defendants DHS, Cunico, Tegeler, CHS, "and/or" Skinner "arbitrarily" denied authorization for a neurological consult for her in November 2021 and March 2022, in violation of statutory or constitutional duties requiring that Plaintiff's medical records be obtained.  (*Id.*)  Not until March 2022, did Plaintiff begin to receive gabapentin and Trileptal at dosages consistent with what her treating neurologist, Dr. Wang, had prescribed her in 2019.  Plaintiff claims that Defendants DHS, Cunico, Tegeler, CHS, Doe 1, Doe 2, "and/or" Skinner knew "and/or" had reason to believe that Plaintiff suffered from a rare neurological disorder, evidenced in Plaintiff's verbal and written communications "and/or

medical records." (*Id.* at 49.) She claims these Defendants deliberately failed to obtain her medical records, which were necessary to ensure continuity of care, and failed to promulgate any quality assurance measures to reduce a substantial risk of harm to her. She also contends that Defendants DHS "and/or" CHS failed to implement a peer review policy, "adequate utilization review policies," and physician supervision of nurse practitioners and physicians' assistants. (*Id.* at 50.) In addition, Plaintiff claims that Defendants DHS, Cunico, CHS, Tegeler, Skinner, "& others," arbitrarily denied provider requests for specialty consultations, "and/or" failed to subject Plaintiff "to any scientific examination to obtain any differential diagnosis" in treating her asserted "shunt malfunction consistent with community standards." (*Id.* at 51.)

**Count IV** is also designated as a claim for the denial of constitutionally adequate medical care at a Maricopa County jail. Plaintiff alleges the following:

When Plaintiff was transferred to a Maricopa County Jail on September 15, 2021, non-parties ADC "and/or" Centurion Health Services failed to send a complete copy of Plaintiff's prison medical records to the jail. (*Id.* at 54.) During her intake at the jail, Plaintiff informed Defendants DHS, CHS, Maricopa County, the Board, Gates, Skinner, "and/or" Doe 1 of her medical history, but these Defendants failed to obtain Plaintiff's medical records for the previous five years, thereby denying her treatment for her medical conditions, which included hypertension and hepatitis C, and failed to take reasonable steps to reduce the risks presented by COVID-19. (*Id.* at 55-57.) Plaintiff further claims that Defendants County, Board, DHS, "and/or" Tegeler had actual knowledge of a substantial risk of harm to her but failed to provide treatment for her hypertension, to "adequately screen" detainees with pre-existing conditions who might be at "unreasonable exposure to air pollutants marked by C.O.V.I.D. 19," and failed to implement any policy or procedure to adequately screen detainees for COVID-19 before assigning detainees to housing. (*Id.* at 57.) She also contends that Defendants Tegeler, County, CHS, "and/or" Skinner "deliberately failed" to implement any policy to adequately test detainees for COVID-19 "and/or" quarantine detainees infected with COVID-19. (*Id.* at 58.) Plaintiff claims that

she twice contracted COVID-19, and suffered from shortness of breath, dizziness, nausea, heart palpitations, chest pains, mild stroke, and a heart attack.  She asserts that because quarantine cells at the Lower Buckeye Jail lacked life alert systems or panic buttons in the event of a health emergency, Plaintiff was "unable to make [her] health needs known."  (*Id.* at 61.)  Plaintiff contends that Defendant CHS unreasonably delayed the procurement of her medical records and provision of appropriate medications until March 2022 and that Jane Does 1 and 2 "and/or" CHS knew or had reason to believe that Plaintiff suffered from a neurological disorder that required neurosurgery but failed to obtain her medical records to ensure that she received appropriate continuity of medical care.

Plaintiff designates **Count V** as a claim for "health care insurer liability," citing "§ 20-3151, et seq." of the Arizona Revised Statutes.  Plaintiff incorporates by reference portions of Counts III and IV, and further alleges the following: The policies, procedures and actions of Defendants DHS, Cunico, Gates, CHS, and Tegeler denied Plaintiff adequate medical care "and/or" caused unreasonable delays in approval of prior authorizations for specialty consultations and evaluations. (*Id.* at 62.)

### III.     Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived her of federal rights, privileges or immunities and (4) caused her damage.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that she suffered a specific injury as a result of the conduct of a particular defendant and she must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

#### A.     DHS and Cunico

Plaintiff sues DHS.  Under the Eleventh Amendment to the Constitution of the United States, neither a state nor state agency may be sued in federal court without its consent.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v.*

*List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Furthermore, "a state is not a 'person' for purposes of section 1983.  Likewise 'arms of the State' such as [state agencies] are not 'persons' under section 1983." *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991) (citation omitted).  Accordingly, the Arizona Department of Health Services will be dismissed based on Eleventh Amendment immunity.

Plaintiff also sues DHS Director Cunico.  Plaintiff makes only vague and conclusory assertions that Cunico "and/or" other Defendants violated her constitutional rights.  Plaintiff alleges no facts to support that Cunico had any involvement in the provision of medical care to jail inmates, much less any involvement in or knowledge of Plaintiff's particular circumstances.  Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pleaded.  *Id*.

Plaintiff fails to allege specific facts to support that Cunico was in any way involved in or responsible for the provision of health care in the County jails, or had the ability to establish any policy, custom, or practice regarding the provision of health care in the County jails.  Accordingly, Plaintiff fails to state a claim against Cunico.

### B.    CHS and Tegeler

As described above, § 1983 imposes liability on any "person" who violates an individual's federal rights while acting under color of state law.  Congress intended municipalities and other local government units to be included among "person[s]" to which § 1983 applies.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 689-90 (1978).  Defendant Correctional Health Services is an administrative subdivision of Maricopa County.  It is not a municipal corporation, local governing body, or private corporation, and, therefore, it is not a "person" amenable to suit under § 1983.  Accordingly, the Court will dismiss Defendant Correctional Health Services.

. . .

Plaintiff also sues the Director of CHS, Defendant Tegeler.  Plaintiff fails to allege specific facts to support when and how Tegeler was in any way involved in a violation of Plaintiff's constitutional rights or to allege facts to support that Plaintiff's constitutional rights were violated pursuant to a policy, custom or practice implemented or condoned by Tegeler.  Accordingly, Plaintiff also fails to state a claim against Defendant Tegeler, and he will likewise be dismissed.

### C.    Giaquinto and Armstrong

Plaintiff asserts that Defendants Giaquinto and Armstrong presided over portions of her criminal proceedings.  Judges are absolutely immune from § 1983 suits for damages for their judicial acts except when they are taken "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986).  An act is "judicial" when it is a function normally performed by a judge and the parties dealt with the judge in his judicial capacity.  *Stump*, 435 U.S. at 362; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir. 1990).  This immunity attaches even if the judge is accused of acting maliciously and corruptly, *Peirson v. Ray*, 386 U.S. 547, 553-54 (1967), or of making grave errors of law or procedure, *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988).  *See also Ammons v. Baldwin*, 705 F.2d 1445, 1446-48 (11th Cir. 1983) (judge entitled to immunity from a claim that he verbally abused and humiliated plaintiff); *Tanner v. Heise*, 879 F.2d 572, 577-78 (9th Cir. 1989).

Plaintiff alleges no facts to support that any action taken by Defendants Giaquinto or Armstrong in Plaintiff's criminal proceedings was taken in the "clear absence of all jurisdiction."  Therefore, Defendants Giaquinto and Armstrong are entitled to absolute judicial immunity as to their acts in connection with Plaintiff's criminal proceedings.  Accordingly, Plaintiff's claims against Defendants Giaquinto and Armstrong will be dismissed based upon absolute judicial immunity.

### D.    Arellano

Plaintiff also sues Defendant Arellano, a prosecutor in some of Plaintiff's criminal proceedings.  Prosecutors are absolutely immune from liability under § 1983 for their

conduct in "initiating a prosecution and in presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Ashelman*, 793 F.2d at 1076. Immunity extends to prosecutors for "eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to judicial proceedings." *Buckley*, 509 U.S. at 270 (citations omitted); *Broam v. Bogan*, 320 F.3d 1023, 1029-30 (9th Cir. 2003) (prosecutor absolutely immune from liability for failing to investigate accusations before filing charges and for knowing use of false testimony at trial).

Plaintiff's allegations against Arellano are solely based on his actions in prosecuting Plaintiff. As described above, he is entitled to absolute prosecutorial immunity for such acts. Accordingly, Defendant Arellano will be dismissed.

**E.    Naegle**

Plaintiff sues her former criminal defense attorney for conduct undertaken in connection with her criminal cases. "[U]nder color of state law" is the equivalent of the "state action" requirement under the Constitution. *Lugar v. Edmondson Oil Co, Inc.*, 457 U.S. 922, 928 (1982); *Jensen v. Lane County*, 222 F.3d 570, 574 (9th Cir. 2000) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *West v. Atkins*, 487 U.S. 42, 49 (1988)). That is, "[a]cting under color of state law is 'a jurisdictional requisite for a § 1983 action.'" *Gritchen v. Collier*, 254 F.3d 807, 812 (9th Cir. 2001) (quoting *West*, 487 U.S. at 46). Whether an attorney representing a criminal defendant is privately retained, a public defender, or court-appointed counsel, he does not act under color of state law. *See Polk County v. Dodson*, 454 U.S. 312, 317-18 (1981); *Miranda*, 319 F.3d at 468. Plaintiff fails to allege any facts to support that Naegle acted under color of state law. Accordingly, Plaintiff fails to state a claim against Naegle under § 1983 and Naegle will be dismissed.

**F.    Skinner**

Plaintiff sues former Maricopa County Sheriff Skinner as a Defendant. As an initial matter, the Court takes judicial notice that Skinner did not assume office until February 8,

2024,[10] well after the events giving rise to Plaintiff's claims.  Moreover, Plaintiff makes only vague and conclusory assertions that Skinner "and/or" other Defendants violated her constitutional rights.  She fails to allege specific facts to support that Skinner implemented or maintained policies, practices, or customs for jail medical providers or staff while Plaintiff was detained in a Maricopa County jail in 2021-2022.  Accordingly, Plaintiff fails to state a claim against Skinner and the claims against Skinner will be dismissed.

### G.   Lopez and Oliveri

Plaintiff alleges that she was subject to community supervision at relevant times.  She alleges that Defendant Lopez requested a warrant for her arrest for violating the terms of community supervision, and that Oliveri acquiesced to the request without independently investigating the underlying facts.  Plaintiff also claims that Oliveri failed to "adequately" train or supervise Lopez.

Plaintiff essentially acknowledges that she failed to comply with at least some conditions of community supervision as a result of her loss of housing and her phone, and court records reflect that Plaintiff had been charged with new offenses prior to Lopez's solicitation of an arrest warrant.  Plaintiff does not identify the reasons cited by Lopez for seeking a warrant, or to allege facts to support that such reason(s) were false.  In any event, under state law, an arrest warrant can only be issued by the ADC Parole Clerk, the ADC Director, or a member of the Arizona Board of Executive Clemency (ABOEC).[11]   That is, authorization for the warrant was subject to review by others.  Plaintiff's claim is therefore analogous to a claim for judicial deception, which requires a plaintiff to allege that (1) the

---

[10]   *See, e.g.,* https://www.azcentral.com/picture-gallery/news/local/phoenix/2024/09/27/maricopa-country-sheriff-russ-skinner/75385978007/   [https://perma.cc/EV4D-7PYY];   https://www.azcentral.com/picture-gallery/news/local/arizona-history/2016/12/07/photos-maricopa-county-sheriffs-through-the-years/91498704/ [https://perma.cc/Y3AF-BK82].

[11] If the ADC "parole clerk," the ADC director, or the board of executive clemency "or any member thereof," has reasonable cause to believe that an offender on community supervision has violated the conditions of community supervision or is about to lapse into criminal ways or company, "may issue a warrant for retaking the prisoner or offender at any time prior to expiration of the maximum sentence of term of community supervision[.]" Ariz. Rev. Stat. § 31-415.

defendant deliberately or recklessly made false statements in the warrant affidavit and (2) the falsehoods or omissions were material to the finding of probable cause. *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004). Omissions or falsehoods are material if the judge could not have "issued the warrant in the absence of the contested statements." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995). Plaintiff has failed to do that here.

Plaintiff asserts that Defendant Oliveri failed to "adequately" train and supervise Lopez. Because Plaintiff fails to state a claim against Defendant Lopez, he also fails to state a claim against Oliveri for inadequate training and supervision. That notwithstanding, to state a claim based on a failure to train or supervise, a plaintiff must allege facts to support that the alleged failure amounted to deliberate indifference. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). A plaintiff must allege facts to support that not only was particular training or supervision inadequate, but also that such inadequacy was the result of "a 'deliberate' or 'conscious' choice" on the part of the defendant. *Id.* at 1213-14; *see Clement v. Gomez,* 298 F.3d 898, 905 (9th Cir. 2002) (a plaintiff must allege facts to support that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy[]makers . . . can reasonably be said to have been deliberately indifferent to the need," quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989))). A plaintiff must also show a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations omitted).

Plaintiff fails to allege facts to support that any allegedly inadequate training was the result of a deliberate or conscious choice by Defendant Oliveri, let alone that any of the alleged conduct of Lopez was the result of inadequate training or supervision. Thus, Plaintiff fails to state a claim against Oliveri on this basis.

### H.    Maricopa County Board of Supervisors and Gates

In Arizona, the responsibility for operating jails is placed by law upon the Sheriff, not on a County's Board of Supervisors. *See* Ariz. Rev. Stat. § 11-441(A)(5); Ariz. Rev.

Stat. § 31-101. The Maricopa County Board of Supervisors lacks authority to establish an official policy with respect to the operation of the jail and cannot be held liable for the actions of the Sheriff or his deputies on a theory of respondeat superior liability. *See Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010).

Plaintiff fails to allege specific facts to support that the Board, or Gates, violated Plaintiff's constitutional rights, or were in any way involved with any alleged violation of her constitutional rights. Neither the Board generally, nor Gates in particular, are responsible for criminal prosecutions or the provision of medical care in County jails or directly oversee operations of County jails or CHS. Accordingly, Plaintiff fails to state a claim against the Board and Gates, and they will be dismissed.

## I. Maricopa County

Plaintiff sues Maricopa County. "A municipality may not be sued under § 1983 solely because an injury was inflicted by its employees or agents." *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006). The actions of individuals may support municipal liability only if the employees were acting pursuant to an official policy or custom of the municipality. *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005). A § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury. *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

Plaintiff merely makes vague and conclusory assertions that her constitutional rights were violated pursuant to a policy, practice, or custom of Maricopa County "and/or" other Defendants. Plaintiff fails to identify any specific policy, custom, or practice of Maricopa County or describe how it resulted in violation of Plaintiff's constitutional rights. Accordingly, Plaintiff fails to state a claim against Maricopa County, and it will be dismissed.

**J.      Does 1 and 2**

In Count III, Plaintiff alleges that she told Doe 1 about her medical conditions and requested a neurosurgery consultation.  She also alleges that she told Doe 1 about prior adverse side-effects from Keppra, but that Doe 1 nevertheless prescribed Keppra for Plaintiff's seizures.  In Count IV, Plaintiff alleges that Doe 2 examined her, requested authorization for a neurological consult, which was denied, and switched Plaintiff to gabapentin from Keppra.

The Ninth Circuit Court of Appeals has held that "claims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)).  To state a medical care claim, a pretrial detainee must show

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)).  A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff alleges no facts to support that she suffered any adverse effects from being prescribed Keppra, much less that the prescription of this medication put Plaintiff at *substantial* risk of suffering serious harm; or that Doe 1 failed to take reasonable available measures to abate that risk. Accordingly, Plaintiff fails to state a claim against Doe 1.

Plaintiff also fails to allege any facts to support when and how Doe 2's conduct put Plaintiff at substantial risk of suffering serious harm. Indeed, Plaintiff alleges that Doe 2 modified her medications and sought a neurological consultation for Plaintiff. Moreover, Plaintiff fails to allege any facts to support that she suffered any injury as a result of Doe 2's alleged conduct. Accordingly, Plaintiff also fails to state a claim against Doe 2.

**V.    State Law Claim**

In Count V, Plaintiff asserts a claim for "health care insurer liability" under Arizona Revised Statutes § 20-3151 et seq. Section 20-3153(A) provides that a "health care insurer is liable for any damages caused to the insurer's enrollee by the insurer's delay in authorizing or failure to authorize a request for medically necessary health care services covered under the health care plan or by the insurer's denial of payment of benefits covered under the health care plan" if (1) the health care insurer delayed authorizing or failed to authorize requested health care services or denied payment of the covered benefits without a reasonable basis therefore, and (2) the health care insurer knew that it acted without a reasonable basis or failed to perform an investigation or evaluation adequate to determine whether its action was supported by a reasonable basis. "A health care insurer" is defined as a "disability insurer, group disability insurer, blanket disability insurer, health care services organization, hospital service corporation, medical service corporation or hospital and medical service corporation." Ariz. Rev. Stat. § 20-3151(2).

Plaintiff fails to allege facts to support that any health care insurer delayed or denied benefits covered under his health care plan absent a reasonable basis and with knowledge

that it lacked a reasonable basis or had failed to perform an investigation adequate to determine whether its action was supported by a reasonable basis. Nor has Plaintiff named any health care insurer as a Defendant. Accordingly, Plaintiff fails to state a claim against any properly named Defendant in Count V and this count will be dismissed.

**IV.    Dismissal without Leave to Amend**

Because Plaintiff has failed to state a claim in her Second Amended Complaint, the Court will dismiss her Second Amended Complaint. "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989). The Court's discretion to deny leave to amend is particularly broad where Plaintiff has previously been permitted to amend his complaint. *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Repeated failure to cure deficiencies is one of the factors to be considered in deciding whether justice requires granting leave to amend. *Moore*, 885 F.2d at 538.

Plaintiff has made multiple efforts at crafting a viable complaint and appears unable to do so despite specific instructions from the Court. The Court finds that further opportunities to amend would be futile. Therefore, the Court, in its discretion, will dismiss Plaintiff's Second Amended Complaint without leave to amend.

**IT IS ORDERED:**

(1)    The Second Amended Complaint (Doc. 35) is **dismissed** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1), and the Clerk of Court must enter judgment accordingly.

(2)    Plaintiff's Rule 59 Motion to Alter or Amend Judgment and/or Rule 60(b)(6) Motion for Relief from a Judgment (Doc. 36) is **denied**.

(3)    The Clerk of Court must make an entry on the docket stating that the dismissal for failure to state a claim may count as a "strike" under 28 U.S.C. § 1915(g).

. . . .

. . . .

. . . .

(4)     The docket shall reflect that the Court, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rules of Appellate Procedure 24(a)(3)(A), has considered whether an appeal of this decision would be taken in good faith and certifies that an appeal would not be taken in good faith for the reasons stated in the Order and because there is no arguable factual or legal basis for an appeal.

Dated this 11th day of February, 2026.

Honorable John J. Tuchi
United States District Judge